**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Attorney for Plaintiff*

- additional counsel on signature page -

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS JENKINS, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| IQIYI, INC., YU GONG, XIAODONG WANG, ROBIN YANHONG LI, QI LU, HERMAN YU, XUYANG REN, VICTOR ZHIXIANG LIANG, and CHUAN WANG, | |
| Defendants. | |

Plaintiff Thomas Jenkins ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding iQIYI, Inc. ("iQIYI" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable

on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) iQIYI American Depository Shares ("ADSs") pursuant and/or traceable to the Company's initial public offering conducted on or about March 29, 2018 (the "IPO" or "Offering"); or (b) iQIYI securities between March 29, 2018, and April 7, 2020, both dates inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.     iQIYI is a subsidiary of Baidu Holdings Limited.  The Company was incorporated in 2009 and is based in Beijing, the People's Republic of China ("China).  The Company was formerly known as Qiyi.com, Inc. and changed its name to iQIYI, Inc. in November 2017.  Following the IPO, iQIYI's shares began publicly trading on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "IQ."

3.     iQIYI, together with its subsidiaries, provides online entertainment services under the iQIYI brand in China.  iQIYI's digital platform provides a collection of Internet video content, including professionally produced content licensed from content providers and self-produced content.   The Company also provides membership, content distribution, online advertising, live broadcasting, online gaming and literature, e-commerce, and talent agency services.

4.     On February 27, 2018, iQIYI filed a registration statement on Form F-1 with the SEC in connection with the IPO (Registration No. 333-223263), which, after several amendments, was declared effective by the SEC on March 28, 2018 (the "Registration Statement").

5.     On March 29, 2018, iQIYI filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement (collectively, the

"Offering Documents").  That same day, iQIYI conducted the IPO pursuant to the Offering Documents and issued 125,000,000 ADSs to the public at the Offering price of $18.00 per share.  iQIYI reaped approximately $2,182,500,000 in proceeds upon the IPO's completion, after underwriting discounts and commission.

6.      The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) iQIYI inflated its number of users, total revenue, deferred revenue, barter transaction revenue, and barter sublicensing revenue; (ii) iQIYI masked these inflated metrics by inflating its expenses, the prices it pays for content, other assets, and acquisitions; (iii) iQIYI accomplished all the foregoing, in part, by improperly accounting for the number of users, revenues, and expenses attributable to its business partners; and (iv) as a result, the Offering Documents and the Company's public statements were materially false and/or misleading and failed to state information required to be stated therein.

7.      On April 7, 2020, Wolfpack Research ("Wolfpack"), a global financial research and due diligence firm, published a report (the "Wolfpack Report") alleging that iQIYI "was committing fraud well before its IPO in 2018 and has continued to do so ever since."  For example, Wolfpack estimated that iQIYI inflated its 2019 revenue by approximately RMB[1]8 billion to RMB13 billion, or 27% to 44%, by overstating its number of users by approximately 42% to 60%.  Wolfpack also alleged that the Company then "inflates its expenses, the prices it pays for content, other assets, and acquisitions in order to burn off fake cash to hide the fraud from its auditor and investors."

---

[1] All references to "RMB" herein are to China's official currency, renminbi.

8. Following publication of the Wolfpack Report, iQIYI's ADS price fell $0.79 per share, or 4.57%, to close at $16.51 per share on April 8, 2020.

9. As of the time this Complaint was filed, iQIYI ADSs continue to trade below the IPO price of $18.00 per share.

10. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of iQIYI's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

11. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13. Venue is proper in this Judicial District pursuant to Section 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)), as the alleged misstatements entered and the subsequent damages took place in this Judicial District. Pursuant to iQIYI's most recent annual report on Form 20-F, as of December 31, 2019, there were 2,259,125,125 Class A ordinary shares of the Company's stock outstanding. Each of the Company's ADSs, which trade on the NASDAQ, represent seven Class A ordinary shares of iQIYI stock. Accordingly, there are presumably hundreds, if not thousands, of investors in iQIYI's ADSs located within the U.S., some of whom undoubtedly reside in this Judicial District.

14.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

15.     Plaintiff, as set forth in the attached Certification, incorporated herein by reference, acquired iQIYI ADSs pursuant and/or traceable to the Offering Documents issued in connection with the Company's IPO, and/or purchased or otherwise acquired iQIYI securities at artificially inflated prices during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant iQIYI is a Cayman Islands corporation with principal executive offices located at 9/F, iQIYI Innovation Building, No. 2 Haidian North First Street, Haidian District, Beijing 100080, China.  iQIYI securities trade in an efficient market on the NASDAQ under the ticker symbol "IQ."

17.     Defendant Yu Gong ("Gong") has served as iQIYI's Chief Executive Officer and a Director of the Company at all relevant times.  Gong signed or authorized the signing of the Offering Documents filed with the SEC.

18.     Defendant Xiaodong Wang ("X. Wang") has served as iQIYI's Chief Financial Officer at all relevant times.  X. Wang signed or authorized the signing of the Offering Documents filed with the SEC.

19.     Defendants Gong and X. Wang are sometimes referred to herein collectively as the "Exchange Act Individual Defendants."

20.     The Exchange Act Individual Defendants possessed the power and authority to control the contents of iQIYI's SEC filings, press releases, and other market communications.  The Exchange Act Individual Defendants were provided with copies of iQIYI's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their

issuance or to cause them to be corrected.  Because of their positions with iQIYI, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

21.     iQIYI and the Exchange Act Individual Defendants are sometimes referred to herein collectively as the "Exchange Act Defendants."

22.     Defendant Robin Yanhong Li ("Li") served as iQIYI's Chairman of the Board of Directors at the time of the IPO.  Li signed or authorized the signing of the Offering Documents filed with the SEC.

23.     Defendant Qi Lu ("Lu") served as a Director of iQIYI at the time of the IPO.  Lu signed or authorized the signing of the Offering Documents filed with the SEC.

24.     Defendant Herman Yu ("Yu") served as a Director of iQIYI at the time of the IPO.  Yu signed or authorized the signing of the Offering Documents filed with the SEC.

25.     Defendant Xuyang Ren ("Ren") served as a Director of iQIYI at the time of the IPO.  Ren signed or authorized the signing of the Offering Documents filed with the SEC.

26.     Defendant Victor Zhixiang Liang ("Liang") served as a Director of iQIYI at the time of the IPO.  Liang signed or authorized the signing of the Offering Documents filed with the SEC.

27.     Defendant Chuan Wang ("C. Wang") served as a Director of iQIYI at the time of the IPO.  C. Wang signed or authorized the signing of the Offering Documents filed with the SEC.

28.     The Exchange Act Individual Defendants and Defendants Li, Lu, Yu, Ren, Liang, and C. Wang are sometimes referred to herein collectively as the "Securities Act Individual Defendants."

29.     As directors, executive officers and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation and sale of iQIYI ADSs in the IPO for their

own benefit and the benefit of iQIYI. The Securities Act Individual Defendants were key members of the IPO working group and executives of iQIYI who pitched investors to purchase the shares sold in the IPO, including in IPO road shows.

30. The Exchange Act Defendants and the Securities Act Individual Defendants are sometimes collectively, in whole or in part, referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

31. iQIYI was incorporated in 2009 and is a subsidiary of Baidu Holdings Limited. The Company was formerly known as Qiyi.com, Inc. and changed its name to iQIYI, Inc. in November 2017. Following the IPO, iQIYI's shares began trading on the NASDAQ under the ticker symbol "IQ."

32. iQIYI, together with its subsidiaries, provides online entertainment services under the iQIYI brand in China. iQIYI's digital platform provides a collection of Internet video content, including professionally produced content licensed from content providers and self-produced content. The Company also provides membership, content distribution, online advertising, live broadcasting, online gaming and literature, e-commerce, and talent agency services.

33. On February 27, 2018, iQIYI filed a registration statement on Form F-1 with the SEC in connection with the IPO (Registration No. 333-223263), which, after several amendments, was declared effective by the SEC on March 28, 2018.

34. On March 29, 2018, iQIYI filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement. That same day, iQIYI conducted the IPO pursuant to the Offering Documents and issued 125,000,000 ADSs to the public at the Offering price of $18.00 per share. iQIYI reaped approximately $2,182,500,000 in proceeds upon the IPO's completion, after underwriting discounts and commission.

**Materially False and Misleading Statements Issued in the Offering Documents**

35.     For iQIYI's fiscal years 2015, 2016, and 2017, the Offering Documents reported total revenues of RMB5.32 billion, RMB11.24 billion, and RMB17.38 billion, respectively, and total operating costs and expenses of RMB7.75 billion, RMB14.03 billion, and RMB21.33 billion, respectively.

36.     The Offering Documents also reported customer advances and deferred revenue of RMB219.48 million, RMB456.82 million, and RMB836.95 billion for iQIYI's fiscal years 2015, 2016, and 2017, respectively, while noting that "[k]ey factors that caused operating cash inflow included [*inter alia*] . . . the increase of customer advances and deferred revenue of RMB237.3 million from RMB219.5 million in 2015 to RMB456.8 million in 2016, which is consistent with membership services revenue growth."

37.     Additionally, the Offering Documents reported barter transaction revenue of RMB349.83 million, RMB382.48 million, and RMB762.74 million for iQIYI's fiscal years 2015, 2016, and 2017, respectively, while asserting that "[t]he attributable cost of the barter transaction is recognized as cost of revenues through the amortization of the sublicensing right component of the exclusive licensed copyright, computed using the individual-film-forecast-computation method in accordance with ASC topic 926, *Entertainment—Films*, or ASC 926."

38.     With respect to barter sublicensing revenue, the Offering Documents asserted that iQIYI, its wholly-owned subsidiaries, variable interest entities ("VIEs") and VIEs' subsidiaries collectively "recognized barter sublicensing revenues of RMB349,834, RMB382,478 and RMB762,741 (US$117,231) and related costs of RMB265,410, RMB362,760 and RMB650,442 (US$99,971) for the years ended December 31, 2015, 2016 and 2017, respectively" (with all such figures in thousands of RMB/U.S. dollars).

39.     Additionally, the Offering Documents touted how iQIYI's expanding user base and user engagement purportedly impacted its membership services revenues, which amounted to RMB996.68

million, RMB3.76 billion, and RMB6.54 billion for its fiscal years 2015, 2016, and 2017, respectively. For example, the Offering Documents represented that the Company's "membership services revenue increased by 73.7% from RMB3,762.2 million in 2016 to RMB6,536.0 million (US$1,004.6 million) in 2017, primarily driven by the increase in the number of subscribing members, which in turn results from the expansion of [its] user base and user engagement," and that "membership services revenue increased by 277.5% from RMB996.7 million in 2015 to RMB3,762.2 million in 2016, primarily driven by the increase in the number of subscribing members, which in turn results from the expansion of [its] user base and user engagement."

40.    With respect to iQIYI's number of users, and, particularly, daily average user ("DAU") and monthly average user ("MAU") growth, the Offering Documents represented that "subscribing members" are individuals that purchased monthly, quarterly or annual membership packages, including individuals with trial membership, and excluding individuals who used paid video on-demand service; that the Company has "a massive and highly engaged user base, which drives [its] revenue growth"; that the Company's "subscribing members reached 60.1 million as of February 28, 2018, over 98% of whom were paying subscribing members"; that, "[b]etween the fourth quarters of 2016 and 2017, [the Company's] average mobile DAUs increased by 0.5% from 125.4 million to 126.0 million, and [its] average mobile MAUs increased by 3.9% from 405.4 million to 421.3 million"; and that, "[b]etween the fourth quarters of 2015 and 2016, [the Company's] average mobile DAUs increased by 42.0% from 88.3 million to 125.4 million, and [its] average mobile MAUs increased by 10.9% from 365.5 million to 405.4 million."

41.    With respect to costs and expenses, the Offering Documents asserted that iQIYI's "[c]ontent cost has historically accounted for the biggest portion of [its] cost of revenues, representing 69.5%, 67.1% and 72.6% of [its] total revenues in 2015, 2016, and 2017, respectively"; that "[c]ontent cost increased by 67.3% from RMB7,541.0 million in 2016 to RMB12,616.9 million (US$1,939.2

million) in 2017"; that "[c]ontent cost increased by 104.1% from RMB3,694.4 million in 2015 to RMB7,541.0 million in 2016"; that "[s]elling expenses increased by 45.4% from RMB1,524.5 million in 2016 to RMB2,217.0 million (US$340.8 million) in 2017," with "advertising expenses increased by 51.3% . . . as [the Company] increased [its *inter alia*] . . . spending on user acquisition channels, including mobile device manufacturers, search engines and mobile app stores"; and that "[s]elling expenses increased by 47.7% from RMB1,032.0 million in 2015 to RMB1,524.5 million in 2016," with "advertising expenses increased by 69.1% . . . as [the Company] increased [its *inter alia*] . . . spending on user acquisition channels, including mobile device manufacturers, search engines and mobile app stores."

42.    The Offering Documents also discussed its business dealings with Xiaomi Ventures Limited and its affiliates ("Xiaomi Group"), representing that iQIYI "generate[s] revenues from memberships sold by Xiaomi Group, through various Xiaomi products"; that, "[f]or the years ended December 31, 2015, 2016 and 2017, [the Company] generated RMB2.1 million, RMB26.8 million and RMB81.5 million (US$12.5 million), respectively, for such membership services revenue"; that, [f]or the years ended December 31, 2015, 2016 and 2017, [the Company] also generated other revenues of RMB10.6 million, RMB7.1 million and RMB4.6 million (US$0.7 million), respectively, from Xiaomi Group for other services"; and that, "[a]s of December 31, 2016, [the Company] had RMB41.3 million due from Xiaomi Group, arising from the aforementioned membership services revenue, advertising services and other services."

43.    With respect to costs and expenses attributed to Xiaomi Group, the Offering Documents represented that iQIYI "incurred cost of revenues for commissions to Xiaomi Group for memberships and advertising services sold through or, presented by various Xiaomi products"; and that, "[f]or the year ended December 31, 2015, 2016 and 2017, [the Company] incurred such cost of revenues in the amount of RMB8.7 million, RMB18.1 million and RMB42.6 million (US$6.5 million), respectively."

44.     The statements referenced in ¶¶ 35-43 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.   Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) iQIYI inflated its number of users, total revenue, deferred revenue, barter transaction revenue, and barter sublicensing revenue; (ii) iQIYI masked these inflated metrics by inflating its expenses, the prices it pays for content, other assets, and acquisitions; (iii) iQIYI accomplished the foregoing, in part, by improperly accounting for number of users, revenues, and expenses attributable to its business partners; and (iv) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

**Materially False and Misleading Statements Issued During the Class Period**

45.     The Class Period begins on March 29, 2018, when iQIYI securities began publicly trading on the NASDAQ pursuant to the false or misleading statements or omissions contained in the Offering Documents.

46.     On October 30, 2018, iQIYI issued a press release entitled "iQIYI Announces Third Quarter 2018 Financial Results," which stated the following, in relevant part, regarding iQIYI subscribers: "The number of total subscribing members was 80.7 million as of September 30, 2018, over 98% of whom were paying subscribing members. This compares to 42.7 million of total subscribing members as of September 30, 2017, up 89% year over year."  That press release also stated that customer advances and deferred revenue was RMB2,356,275,000.

47.     On February 21, 2019, iQIYI issued a press release entitled "iQIYI Announces Fourth Quarter and Fiscal Year 2018 Financial Results," which stated the following, in relevant part, regarding iQIYI subscribers: "The number of total subscribing members was 87.4 million as of December 31, 2018,

98.5% of whom were paying subscribing members. This compares to 50.8 million of total subscribing members as of December 31, 2017, up 72% year over year." That press release also stated that customer advances and deferred revenue was RMB2,195,283,000.

48.     On March 15, 2019, iQIYI filed an Annual Report on Form 20-F with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2018 (the "2018 20-F"). For 2018, iQIYI reported total revenues of RMB24.99 billion, customer advances and deferred revenue of RMB466.96 million, barter transaction revenue of $1.08 billion, barter sublicensing revenue of RMB1.08 billion, and total operating costs and expenses of RMB33.30 billion.

49.     With respect to iQIYI's number of users, the 2018 20-F represented that, "[f]or the year of 2018, our average mobile MAUs were 454.5 million and our average mobile DAUs were 135.4 million." Relatedly, the 2018 20-F stated that "membership services revenue increased by 72.3% from RMB6,166.1 million (net of VAT) in 2017 to RMB10,622.8 million (US$1,545.0 million) in 2018, primarily driven by the increase in the number of subscribing members, which in turn was primarily a result of the popularity of [the Company's] premium content, especially [its] self-produced blockbuster titles"; that "[t]he number of subscribing members increased by 72% from 50.8 million as of December 31, 2017 to 87.4 million as of December 31, 2018"; and that, "[e]xcluding individuals with trial memberships, the number of subscribing members increased by 72.2% from 50.0 million as of December 31, 2017 to 86.1 million as of December 31, 2018."

50.     With respect to costs and expenses, iQIYI represented that "[c]ontent cost increased by 66.9% from RMB12,616.9 million in 2017 to RMB21,060.9 million (US$3,063.2 million) in 2018," which "was primarily due to higher expenses recorded relating to licensed copyrights and self-produced content as [the Company] continue[d] to invest in [its] comprehensive and diversified content library"; and that "[s]elling expenses increased by 46.4% from RMB2,217.0 million in 2017 to RMB3,244.9 million (US$472.0 million) in 2018," with "marketing and promotional expenses increased by 65.2% . .

. as [the Company] increased [*inter alia*] . . . spending on user acquisition channels, including mobile device manufacturers, search engines and mobile app stores."

51.     Additionally, the 2018 20-F contained statements similar to those referenced in ¶¶ 37 and 40-41, *supra*, regarding iQIYI's methodology for calculating barter transaction/sublicensing revenue, how the Company accounts for "subscribing members," discussing the Company's "massive" user base, and how content expenses historically accounted for the largest portion of the Company's cost of revenues.

52.     The 2018 20-F also provided disclosures about iQIYI's July 17, 2018 acquisition of Skymoons Inc. and Chengdu Skymoons Digital Entertainment Co., Ltd. (collectively, "Skymoons"), entities that focus on the development of mobile games, representing, in relevant part, that "[t]he aggregate payment for the acquisition of Skymoons consists of a fixed payment of cash of RMB1,157.0 million (US$168.3 million), as well as a contingent payment of up to RMB130.0 million in cash and issuance of 23,777,706 Class A ordinary shares if specified adjusted net profit targets are met post-acquisition (the 'Earn-Out')"; and that "[t]he acquisition-date fair value of the consideration transferred totaled RMB1,242.9 million (US$180.8 million)," consisting "of the fixed payment of cash amounting to RMB1,157.0 million (US$168.3 million) and the portion of the EarnOut payment described above of RMB85.9 million (US$12.5 million), which are not contingent on the continued employment."  Since the acquisition date, Skymoons' results have been included in iQIYI's consolidated financial statements.

53.     Appended as exhibits to the 2018 20-F were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Exchange Act Individual Defendants certified that "[t]he [2018 20-F] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [2018 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

54.     On May 16, 2019, iQIYI issued a press release entitled "iQIYI Announces first Quarter 2019 Financial Results," which stated the following, in relevant part, regarding its subscribers: "The number of total subscribing members was 96.8 million as of March 31, 2019, 98.6% of whom were paying subscribing members. This compares to 61.3 million of total subscribing members as of March 31, 2018, up 58% year over year."  That press release also stated that customer advances and deferred revenue was RMB1,960,719,000.

55.     On March 12, 2020, iQIYI filed an Annual Report on Form 20-F with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2019 (the "2019 20-F").  For 2019, iQIYI reported total revenues of RMB28.99 billion, customer advances and deferred revenue of RMB880.84 million, barter transaction revenue of RMB682.94 million, barter sublicensing revenue of RMB682.94 million, and total operating costs and expenses of RMB38.25 billion.

56.     With respect to iQIYI's number of users, the 2019 20-F represented that "[f]or the year of 2019, our average mobile MAUs were 476.0 million and our average mobile DAUs were 139.9 million."  Relatedly, the 2019 20-F stated that "membership services revenue increased by 35.9% from RMB10,622.8 million in 2018 to RMB14,435.6 million (US$2,073.5 million) in 2019, primarily driven by the increase in the number of subscribing members," which "was primarily a result of the popularity of [the Company's] premium content, especially [its] self-produced blockbuster titles, and various operational initiatives"; that "[t]he number of subscribing members increased by 22.3% from 87.4 million as of December 31, 2018 to 106.9 million as of December 31, 2019"; and that, "[e]xcluding individuals with trial memberships, the number of subscribing members increased by 22.7% from 86.1 million as of December 31, 2018 to 105.7 million as of December 31, 2019."

57.     With respect to costs and expenses, iQIYI represented that "[c]ontent cost increased by 5.6% from RMB21,060.9 million in 2018 to RMB22,246.8 million (US$3,195.6 million) in 2019," which

was "primarily due to higher content costs recorded relating to licensed copyrights and self-produced content as [the Company] continue[d] to invest in [its] comprehensive and diversified content library"; and that "[s]elling expenses increased by 22.8% from RMB3,244.9 million in 2018 to RMB3,984.2 million (US$572.3 million) in 2019," with "marketing and promotional expenses increased by 21.5% . . . as [the Company] increased [its *inter alia*] . . . spending on user acquisition channels, including mobile device manufacturers, search engines and mobile app stores."

58.     Additionally, the 2019 20-F contained statements similar to those referenced in ¶¶ 40-41 and 53, *supra*, regarding how the Company accounts for "subscribing members," discussing the Company's "massive" user base, how content expenses historically accounted for the largest portion of the Company's cost of revenues, and SOX certifications signed by the Exchange Act Individual Defendants.

59.     The statements referenced in ¶¶ 46-58 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.  Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that:  (i) iQIYI inflated its number of users, total revenue, deferred revenue, barter transaction revenue, and barter sublicensing revenue; (ii) iQIYI masked these inflated metrics by inflating its expenses, the prices it pays for content, other assets, and acquisitions; (iii) iQIYI accomplished the foregoing, in part, by improperly accounting for number of users, revenues, and expenses attributable to its business partners; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

60.     On April 7, 2020, Wolfpack, a global financial research and due diligence firm, published a report alleging that iQIYI "was committing fraud well before its IPO in 2018 and has continued to do so ever since."  For example, Wolfpack estimated that iQIYI inflated its 2019 revenue by approximately

RMB8 billion to RMB13 billion, or 27% to 44%, by overstating its number of users by approximately 42% to 60%, and then "inflate[d] its expenses, the prices it pays for content, other assets, and acquisitions," including Skymoons, "in order to burn off fake cash to hide the fraud from its auditor and investors."  Wolfpack also alleged, in relevant part:

> We conducted in-person surveys of 1,563 people within IQ's target demographic in China during October and November 2019 and found that approximately 31.9% of IQ users have access to its VIP-only content through their memberships with IQ's partners such as JD.com or Xiaomi TV.  IQ accounts for dual memberships on a gross basis, meaning it records the full amount of revenue and records its partners' share as expenses. This allows IQ to inflate its revenues and burn off fake cash at the same time.

> We also obtained Chinese credit reports for all of IQ's VIEs and WFOEs since 2015. When compared to IQ's prospectus, we found that the deferred revenues reported to the SEC were inflated by 261.7%, 165.5% and 86.2% in 2015, 2016 and 2017, respectively. Deferred revenue is a balance sheet account that arises when customers prepay for a service to be delivered in the future. Because IQ's subscription customers prepay, most of its revenues are a function of deferred revenue. These pre-IPO overstatements inherently cause IQ's post-IPO revenues to continue to be overstated.

> Arguably one of the most egregious examples of accounting fraud IQ commits is the inflation of its barter transaction revenue. Barter sublicensing revenues are determined by IQ's internal estimates of the value of the content it traded. In other words, IQ's management can effectively assign any value they want to these transactions, providing an easy opportunity to inflate its revenues. Based on the highest-end estimated value per non-exclusive episode provided by a former IQ employee involved in content acquisition, IQ would have needed to barter the licenses for ~3.9x and ~3.2x the total number of TV series episodes produced by all Chinese production companies to legitimately reach its reported barter revenues in 2018 and 2019, respectively.

61.     Following publication of the Wolfpack Report, iQIYI's ADS price fell $0.79 per share, or 4.57%, to close at $16.51 per share on April 8, 2020.

62.     As of the time this Complaint was filed, iQIYI ADSs continue to trade below the IPO price of $18.00 per share.

63.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of iQIYI' securities, Plaintiff and other Class members have suffered significant losses and damages.

16

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

64.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) iQIYI ADSs in the IPO or purchased iQIYI ADSs thereafter in the stock market pursuant and/or traceable to the Company's Offering Documents issued in connection with the IPO; or (b) iQIYI securities during the Class Period; and were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

65.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, iQIYI securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by iQIYI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

66.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

67.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

68.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of iQIYI;

- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether the Exchange Act Individual Defendants caused iQIYI to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of iQIYI securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

69.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

70.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- whether Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- iQIYI securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold iQIYI securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

71.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

72.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 11 of the Securities Act Against All Defendants)

73.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

74.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Defendants.

75.     The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

76.     iQIYI is the registrant for the IPO.  Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

77.     As issuer of the shares, iQIYI is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

78.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

79.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

80.     Plaintiff acquired iQIYI shares pursuant and/or traceable to the Offering Documents for the IPO.

81.     Plaintiff and the Class have sustained damages.  The value of iQIYI ADSs has declined substantially subsequent to and because of Defendants' violations.

## COUNT II

### (Violations of Section 15 of the Securities Act
### Against the Securities Act Individual Defendants)

82.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

83.     This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

84.     The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of iQIYI within the meaning of Section 15 of the Securities Act.  The Securities Act Individual Defendants had the power and influence and exercised the same to cause iQIYI to engage in the acts described herein.

85.     The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

86.     By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## COUNT III

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)

87.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

88.     This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

89.     During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of iQIYI securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire iQIYI securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

90.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the

quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for iQIYI securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about iQIYI's finances and business prospects.

91.     By virtue of their positions at iQIYI, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants.  Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth.  In addition, each of the Exchange Act Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

92.     Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control.  As the senior managers and/or directors of iQIYI, the Exchange Act Individual Defendants had knowledge of the details of iQIYI's internal affairs.

93.     The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of iQIYI.  As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to iQIYI's businesses, operations, future financial condition and future prospects.  As a result of the dissemination

of the aforementioned false and misleading reports, releases and public statements, the market price of iQIYI securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning iQIYI's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired iQIYI securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

94.     During the Class Period, iQIYI securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of iQIYI securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of iQIYI securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of iQIYI securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

95.     By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

96.     As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective

purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT IV

### (Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)

97.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

98.     During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of iQIYI, and conducted and participated, directly and indirectly, in the conduct of iQIYI's business affairs.  Because of their senior positions, they knew the adverse non-public information about iQIYI's misstatement of income and expenses and false financial statements.

99.     As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to iQIYI's financial condition and results of operations, and to correct promptly any public statements issued by iQIYI which had become materially false or misleading.

100.     Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which iQIYI disseminated in the marketplace during the Class Period concerning iQIYI's results of operations.  Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause iQIYI to engage in the wrongful acts complained of herein. The Exchange Act Individual Defendants therefore, were "controlling persons" of iQIYI within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of iQIYI securities.

101.     Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of iQIYI.  By reason of their senior management positions and/or being directors of iQIYI, each of the

Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, iQIYI to engage in the unlawful acts and conduct complained of herein. Each of the Exchange Act Individual Defendants exercised control over the general operations of iQIYI and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

102.    By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by iQIYI.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury.

Dated:  April 27, 2020                           Respectfully submitted,

                                                **POMERANTZ LLP**

                                                *s/ Jennifer Pafiti*
                                                Jennifer Pafiti (SBN 282790)
                                                1100 Glendon Avenue, 15th Floor
                                                Los Angeles, CA 90024
                                                Telephone: (310) 405-7190
                                                jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer
(*pro hac vice* application forthcoming)
1200 Ashwood Parkway, Suite 410
Atlanta, Georgia 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
cholzer@holzerlaw.com

*Attorneys for Plaintiff*

**CERTIFICATION OF NAMED PLAINTIFF**
**PURSUANT TO FEDERAL SECURITIES LAWS**

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows **- List additional transactions on Schedule A, if necessary**:

Purchases:

| Ticker of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
|---|---|---|---|
| IQ | 06/19/2018 | 1300 | 43.80 |

Sales:

| Ticker of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
|---|---|---|---|
| IQ | 12/20/18 | 210 | 15.50 |
| | 12/12/18 | 150 | 18.50 |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

N/A

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___07___ day of ___April___, 2020 in _█████████████████████.

                                                      City                    State

(Signature) X _____

(Print Name) _____

Thomas Jenkins

                 First                    Last

**iQIYI, Inc. (IQ)**                                                        **Jenkins, Thomas**

**List of Purchases and Sales**

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|----------------------|---------------------|
| 6/19/2018 | Purchase | 1,300 | $43.8000 |
| 12/12/2018 | Sale | (150) | $18.5000 |
| 12/20/2018 | Sale | (210) | $15.5000 |