United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS JENKINS,
Plaintiff,

v.

IQIYI, INC., et al.,
Defendants.

Case No. 20-cv-02882-PJH

**ORDER GRANTING DEFENDANT IQIYI, INC.'S UNOPPOSED MOTION TO TRANSFER AND TERMINATING PENDING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF**

Re: Dkt. 13, 19, 22, 27, 34, 38, 44, 48

Defendant iQIYI, Inc. ("iQIYI") has moved to transfer this action to the United States District Court for the Eastern District of New York (the "Eastern District of New York"). Dkt. 13. Plaintiff Thomas Jenkins ("plaintiff") failed to oppose transfer. Having carefully considered the parties' submissions, the relevant law, and the arguments of counsel, the court **GRANTS** iQIYI's motion.

**BACKGROUND**

On April 27, 2020, plaintiff filed a class action complaint in this court against iQIYI, as well as various of its executive officers and directors—namely, Yu Gong, Xiaodong Wang, Robin Yanhong Li, Qi Lu, Herman Yu, Xuyang Ren, Victor Zhixiang Liang, and Chuan Wang (collectively, the "individual defendants"). Dkt. 1 (Class Action Complaint ("CAC")).

In his CAC, plaintiff alleges various claims under the federal securities laws related to IQIY's March 29, 2018 initial public offering ("IPO"), including ones for violation of Section 11 of the Securities Act (Title 15 U.S.C. § 77k), Section 15 of that act (Title 15 U.S.C. § 77o), Section 10(b) of the Exchange Act (Title 15 U.S.C. § 78j(b)) as well as its Rule 10b-5 counterpart, and Section 20(a) of that act (Title 15 U.S.C. § 78t(a)). CAC ¶¶

United States District Court
Northern District of California

73-102. Plaintiff seeks to represent a class generally comprising the following:

> [A]ll persons and entities other than Defendants that purchased or otherwise acquired: (a) iQIYI American Depository Shares ("ADSs") pursuant and/or traceable to the Company's initial public offering conducted on or about March 29, 2018 (the "IPO" or "Offering"); or (b) iQIYI securities between March 29, 2018, and April 7, 2020, both dates inclusive (the "Class Period"). CAC ¶¶ 1, 64.

On June 5, 2020, defendant iQIYI moved to transfer this action to the Eastern District of New York. Dkt. 13. Based on the parties' prior representations, the individual defendants, who live in China, have not yet been served with process in this action. Dkt. 11. To date, plaintiff has failed to file any opposition to this motion.

**A. iQIYI and its ADSs**

iQIYI provides online entertainment services in China. CAC ¶ 3. It is a Cayman Islands company with a principal place of business in Beijing. Id. ¶ 16. iQIYI has an agent for service of process in New York but otherwise maintains no other presence in the United States. Dkt. 13-1 at 113 ¶ 6.

On March 29, 2018, iQIYI conducted the IPO of its American Depositary Shares ("ADSs")[1] pursuant to a Form F-1 registration statement and Form 424B4 prospectus (the "Offering Documents"). CAC ¶¶ 4-5. iQIYI prepared the Offering Documents in Hong Kong and transmitted them from there to the SEC in Washington, D.C. Dkt. 13-1 at 114 ¶¶ 14-15. Following the IPO, iQIYI's ADSs began trading on NASDAQ. CAC ¶ 2.

On March 16, 2018, iQIYI filed a Form F-6 registration statement with the SEC, which attached a "form of deposit agreement" between iQIYI, JPMorgan, and iQIYI ADS holders. Dkt. 13-1 at 65. That deposit agreement states that its terms bind iQIYI's ADS holders. Dkt. 13-1 at 77 § 2(c) ("Holders shall be bound by the terms and conditions of

---

[1] An ADS "is the security that represents an ownership interest" in a foreign company's "deposited securities." Am. Depositary Receipts, Release No. 274, 1991 WL 294145, at *2 n.5 (May 23, 1991). Throughout this order, the court will cite documents referencing a related but technically distinct item, namely "American Depositary Receipts" ("ADRs"). An ADR "is the physical certificate that evidences ADSs." Id. The SEC has previously noted that investors in the foreign securities market "largely do not differentiate between ADRs and ADSs" and, thus, "it appears appropriate to eliminate the ADR/ADS distinction." Id. To simplify, the court will use only the term "ADS" in its analysis.

this Deposit Agreement and of the form of ADR . . ."); id. at 84 § 18 ("the Holder and owners of ADRs from time to time shall be parties to this Deposit Agreement and shall be bound by all of the provisions hereof."). The Offering Documents reiterate the deposit agreement's application. Id. at 60 (Form F-1 referencing application of the deposit agreement's terms); id. at 63 (Form 424B4 excerpt referencing the same).

The deposit agreement states that an ADS holder agrees that all actions brought by the holder against the Company "arising out of or based upon . . . the ADSs or the ADRs or the transactions contemplated hereby . . . ***may only be instituted in a state or federal court in New York, New York*** ('New York, NY')." Id. at 85 § 20(b) (emphasis added). That agreement also provides that iQIYI waives any objection to laying venue in New York courts for proceedings against it that arise out of the above cited subject matter. Id. at 84 § 20(a).

**B. Alleged Acts During the Class Period**

From October 30, 2018 to March 12, 2020, iQIYI filed two annual reports and issued three press releases. CAC ¶¶ 46-59. The three press releases were prepared in Beijing. Dkt. 13-1 at 114 ¶¶ 16-17, 19. The two annual reports were also prepared in Beijing and then filed electronically with the SEC in Washington, D.C. Id. at 114 ¶¶ 18, 20. iQIYI made no efforts to specifically transmit the annual reports and the press releases into this district. Id. at 114-15 ¶¶ 16-20.

On April 7, 2020, a research and due diligence firm released a report (the "Report") alleging that iQIYI made false and misleading statements by, among other things, inflating its 2019 revenue by 27% to 44% and inflating its expenses to burn its overstated revenues. CAC ¶ 60. The next day, iQIYI ADS prices fell 4.57%. Id. ¶ 61.

**C. The Pending Eastern District of New York Action**

On April 16, 2020, Jean Lee, an alleged holder of iQIYI ADSs, filed Jean Lee v. iQIYI, Inc., et. al., 20-cv-1830-LDH-JO (E.D.N.Y.), a federal securities class action complaint in the Eastern District of New York on behalf of all holders who purchased iQIYI securities between March 29, 2018 and April 7, 2020 (the "EDNY Action"). Dkt. 13-

1 at 6 ¶ 1. The EDNY Action asserts claims under (1) Section 10(b) and Rule 10b-5 of the Exchange Act against iQIYI, Gong, and X. Wang and (2) Section 20(a) of that act against Gong and X. Wang. Id. at 24-28 ¶¶ 50-65. Among other things, the EDNY Action alleges that the defendants made false or misleading statements regarding iQIYI's revenue figures, user numbers and expenses in (i) the Offering Documents, and (ii) other public statements between February 2018 and April 2020. Id. at 8-22 ¶¶ 15-43.

## DISCUSSION

### A. Legal Standards

iQIYI advances three independent bases in support of its motion to transfer, only two of which the court analyzes here: (1) the deposit agreement's forum selection clause; and (2) a conventional analysis under Title 28 U.S.C. § 1404(a). Dkt. 13 at 16

#### 1. Transfer Pursuant to a Forum Selection Clause

A district court considering a § 1404(a) motion should give "controlling weight" to a valid forum selection clause "in all but the most exceptional cases." Atl. Marine Constr. Co. v. U.S. Dist. Court, 571 U.S. 49, 63 (2013). A valid forum selection clause changes the court's usual Section 1404(a) analysis in three ways. First, the plaintiff's choice of forum merits "no weight." Id. Second, the court may "consider arguments about public-interest factors only" since the parties stipulated to a particular forum. Id. at 64. Finally, the party opposing transfer bears the burden of demonstrating that the action should not be transferred. Id. at 64.

#### 2. Discretionary Transfer Under 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). For a court to transfer venue under § 1404(a), it must find that (1) "the [transferee] court is one where the action might have been brought" and (2) the "convenience of parties and witnesses in the interest of justice favor transfer." Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985). Courts maintain broad discretion to adjudicate motions for transfer on a "case-by-case" basis. Stewart Org. Inc.

v. Ricoh Corp., 487 U.S. 22, 29 (1988).

Under § 1404(a), the court must "weigh multiple factors in its [transfer] determination." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). Courts in this district typically weigh the following factors in its transfer determination: (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of the witnesses, (4) the ease of access to the evidence, (5) the familiarity of each forum with the applicable law, (6) the feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. Martin v. Glob. Tel*Link Corp., 2015 WL 2124379, at *2 (N.D. Cal. May 6, 2015). Lastly, the moving party bears the burden of justifying the requested transfer. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).

**B. Analysis**

**1. The Forum Selection Clause Mandates Transfer**

The Ninth Circuit has recognized that a deposit agreement may bind an ADS holder to the agreement's terms. Batchelder v. Kawamoto, 147 F.3d 915, 919 (9th Cir. 1998), as amended (July 15, 1998) ("[A]s noted above, ADR holders are deemed to have agreed to all terms in the deposit agreement by their acceptance and holding of ADRs.'") citing Am. Depositary Receipts, Release No. 274, 1991 WL 294145, at *11 n.63 (May 23, 1991). Accordingly, the court concludes that the form deposit agreement filed by iQIYI on March 16, 2018 may limit plaintiff's venue selection rights as an iQIYI ADS holder.

In relevant part, that agreement includes a forum and venue selection clause that provides the following:

> "By holding an ADS or an interest therein, Holders and owners of interests in ADSs each also irrevocably agree that any legal suit, action or proceeding against or involving the Company . . . brought by Holders or owners of interests in ADSs, arising out of or based upon this Deposit Agreement, the ADSs or the ADRs or the transactions contemplated hereby or thereby, may only be instituted in a state or federal court in New York, New York." Dkt. 13-1 at 85 § 20(b).

This action involves iQIYI and plainly arises out of the IPO contemplated by the

United States District Court
Northern District of California

deposit agreement and issued iQIYI ADSs. At core, plaintiff alleges that defendants misled him and other putative class members into purchasing iQIYI's ADSs by falsely representing the numbers of users of the Company's services as well as its financial information. CAC ¶¶ 45-59. Plaintiff seeks to recover damages based on "the precipitous decline in the market value of iQIYI's securities." Id. ¶¶ 10, 81, 96. Given his non-opposition to defendant's motion, plaintiff failed to proffer any evidence of fraud that would justifying finding this clause invalid. Accordingly, the court concludes that the deposit agreement's forum selection clause itself warrants the requested transfer

**2. Traditional § 1404(a) Analysis Warrants Transfer**

Independent of the above, the court concludes that defendant further justified transfer under a traditional analysis of Title 28 U.S.C. § 1404(a).

**a. Plaintiff Could Have Initiated This Action in the Eastern District of New York**

"In determining whether an action might have been brought in a district, the court looks to whether the action initially could have been commenced in that district." Hatch, 758 F.2d at 414.

Here, iQIYI consented in the deposit agreement to jurisdiction and venue in any New York court for suits involving such agreement or its ADSs. Dkt. 13-1 at 84 § 20(a) ("The Company irrevocably agrees that any legal suit . . . involving the Company brought by . . . any Holder, arising out of or based upon this Deposit Agreement, the ADSs or the ADRs or the transactions contemplated hereby . . . may be instituted in any state or federal court in New York, New York, ***and irrevocably waives any objection which it may now or hereafter have to the laying of venue of any such proceeding, and irrevocably submits to the non-exclusive jurisdiction of such courts in any such suit, action or proceeding***.") (emphasis added). Accordingly, the court concludes that plaintiff may have filed this action in the Eastern District of New York.[2]

[2] The court acknowledges that the individual defendants may subsequently object to personal jurisdiction in the Eastern District of New York. Given plaintiff's failure to

**b. Transfer Would Advance the Interests of Justice**

Here, the court concludes that the interests of justice favor granting the requested transfer. Significantly, the court finds that the feasibility of consolidating this action with the EDNY Action following transfer outweighs any deference owed to plaintiff's choice of forum.

**i. Plaintiff's Choice of Forum**

While a plaintiff's choice of forum is generally entitled to some deference, courts assign such deference less weight where, as here, the suit is a class action. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). Such assignment is further diminished where, again, as here, plaintiff does not live in this district. Vu v. Ortho-McNeil Pharm., Inc., 602 F. Supp. 2d 1151, 1156-57 (N.D. Cal. 2009). Accordingly, to the extent plaintiff's choice of forum is entitled to any deference, such deference is minimal.

**ii. Feasibility of Consolidation**

The Exchange Act contemplates consolidating class actions that assert "substantially the same claim or claims" under its provisions. 15 U.S.C. §78u-4(a)(3)(B)(ii). Both this action and the EDNY Action share common defendants, allege the same underlying facts, assert similar claims under the Exchange Act, and seek the same relief on behalf of identical putative plaintiff classes. Indeed, based on a post-motion filing by iQIYI on June 26, 2020, it appears that process has already commenced with respect to another action previously pending in the Southern District of New York (apparently now dismissed). Dkt. 54. Given the above, the court concludes that this action's consolidation with the EDNY Action is feasible.

**iii. Convenience of the Parties and Witnesses**

None of the parties live or do business in this district. iQIYI does not maintain an agent for service of process in this district. The court has no basis to conclude that any

---

oppose the instant motion and the individual defendants appear not yet to have been served in this action, the court makes no judgment about whether the Eastern District of New York would in fact retain personal jurisdiction over those defendants.

witnesses with the knowledge of the alleged acts are located in this district. Accordingly, litigating this action in this district would not provide any marginal convenience for the parties or witnesses. Because transferring this action would help the parties avoid wasting resources and engaging in duplicative litigation by its potential relation and consolidation to the EDNY Action, this factor cuts in favor of transfer.

**iv. Relative Local Interest**

As discussed above, the Eastern District of New York is already considering a similar action that appears properly before it on the basis of the deposit agreement's forum selection clause. Given that, the Eastern District of New York has a local interest that the instant district does not. Separately, as previously mentioned, the parties in this action do not have a relationship to this district and none of the events giving rise to it occurred here. Accordingly, this factor cuts in favor of transfer.

**v. The Remaining Factors**

The remaining factors are either neutral or cut in favor of transfer. Neither this district nor the Eastern District of New York have any relative advantages for accessibility to evidence. Both know federal law. Transfer would decrease congestion in this district without adding congestion in the Eastern District of New York. Lastly, there is no cognizable different in the rate at which either district conducts its proceedings.[3]

**CONCLUSION**

For the foregoing reasons, the court **GRANTS** iQIYI's motion to transfer. Given that the court will no longer retain jurisdiction of this action, it hereby **TERMINATES** the various pending motions for appointment as lead plaintiff and counsel (Dkts. 19, 22, 27, 34, 38, 44, 48) without decision. The clerk shall transfer this action to the United States District Court for the Eastern District of New York.

**IT IS SO ORDERED.**

[3] The court also notes that, in the alternative, transfer is further warranted under the "first-to-file" rule because plaintiff Jean Lee commenced the EDNY Action eleven days before this one. Compare CAC with Dkt. 13-1 at 5.

Dated: July 6, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge